IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:17-CV-01574 |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| CARNEGIE MELLON UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PROHIBITING DEFENDANT FROM CARRYING OUT A SECOND HEARING AGAINST PLAINTIFF ON DECEMBER 6, 2017 AND FROM TAKING DISCIPLINARY ACTION AGAINST PLAINTIFF FOR INITIATING THIS LAWSUIT**

Plaintiff John Doe ("Plaintiff" or "John"), but the undersigned, files this Memorandum of Law in Support of Motion For A Temporary Restraining Order And Preliminary Injunction Prohibiting Defendant From Carrying Out A Second Disciplinary Hearing Against Plaintiff On December 6, 2017 And From Proceeding Against Him For Initiating The Instant Lawsuit.

### I.   Procedural History

Plaintiff commenced this action against Defendant Carnegie Mellon University ("CMU" or "the University") on December 4, 2017, and steps to effectuate service have been undertaken.

### II.   Introduction

Plaintiff's Verified Complaint is incorporated herein by reference. See Docket Entry 1. A summary of Plaintiff's factual allegations is provided here. This case arises out of the policies and procedures established by CMU, and CMU's actions pursuant to those policies and procedures, which resulted in Plaintiff being subjected to a student conduct investigation and hearing process stemming from false allegations of nonconsensual sexual activity between Plaintiff and another CMU student, Jane Roe ("Jane"). Both John and Jane were, for all relevant

times, and still are, students at CMU. The false allegations at issue in this case stem from consensual sexual activity between John and Jane on September 17-18, 2016. Several months later, in February 2017, Jane reported to CMU that she had been sexually assaulted by John. Thereafter, CMU opened an investigation and student conduct process, which was clearly performed and carried out in a manner that discriminated against John based upon his gender. After a July 12, 2017 hearing on the matter, John Hannon, CMU's then Associate Vice President Of Student Affairs For Community Life, made the unilateral decision to remand the matter for another University Disciplinary Committee ("UDC") hearing due to procedural errors that occurred at the initial hearing.

The applicable CMU policies and procedures do not provide for a hearing to be remanded for a new hearing. John has been and is currently being subjected to another investigatory and hearing process, which is proceeding in a manner identical to the first – one which is discriminating against him based upon his gender. The biased actions and procedures that occurred during the initial investigation and hearing have disadvantaged John, and it is abundantly clear that they continue to operate to harm him. Because of the unfairness demonstrated by CMU toward John and the deprivation of John's rights, as well as CMU's various breaches of its contract with John, John is seeking injunctive relief from this court to prevent further damage and harm to him.

### III.   Argument

*1.   Legal Standard*

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or a preliminary injunction must demonstrate:

(1) A likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary injunction will not result

in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Layshock ex rel. v. Hermitage School Dist.*, 412 F. Supp. 2d 502 (W.D. Pa. 2006) (quoting *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004)). Courts in jurisdictions throughout the nation have recognized that immediate injunctive relief is often appropriate in cases such as this, involving universities and students with similar claims to those at issue here. *See, e.g. Doe v. The Pennsylvania State University*, 2017 WL 3581672 (M.D. Pa. Aug. 18, 2017); *Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017); *Doe v. University of Notre Dame*, 2017 WL 1836939 (N.D. Indiana, South Bend Division May 8, 2017); *Ritter v. Oklahoma*, 2016 WL 2659602, at *8 (W.D. Okla. May 6, 2016); and *King v. DePauw Univ.*, 2014 WL 4197507 (S.D. Ind. Aug. 22, 2014).

As the facts alleged in Plaintiff's Verified Complaint demonstrate, consideration of these factors establishes Plaintiff's right to a temporary restraining order and subsequent preliminary injunction preventing CMU from holding a second UDC hearing and further disciplining John for initiating this lawsuit. John is very likely to succeed on his causes of action. John has already suffered and will continue to suffer irreparable harm if the school is not enjoined. Specifically, John's educational opportunities and potential employment opportunities have been harmed by CMU's unlawful conduct, unfair policies and procedures, breaches of contract, and procedural violations.

2. *Plaintiff is Likely to Succeed on the Merits*
    i. **Violations of Title IX**

Title IX requires that "[n]o person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Moreover, it "bar[s] the imposition of university discipline where gender is a motivating factor" and is enforceable through a private right of action for damage as well as for injunctive relief. *Doe v. Columbia Univ.,* 831 F.3d 46 (2d Cir. 2016) (internal citations omitted).

John is very likely to succeed on the merits of his claim that CMU, a recipient of federal funding, discriminated against him based upon his gender, in violation of Title IX and will continue to so discriminate. Among other things, the University has: limited John's ability to have full notice of the charges and allegations against him, failed to require that he be provided with all relevant evidence, prohibited him from presenting witnesses on his behalf, conducted the investigation process in a biased manner, created a presumption that John acted as Jane alleged, denied John the ability to bring counter allegations, and remanded the initial hearing for a second hearing. As set forth in great detail in the Verified Complaint, the University's actions showed a clear bias in favor of Jane and against John, due to John's gender. See Docket Entry 1 at ¶¶ 52-54, 63, 72, 74-78, 84-85, 90, 97.

The University has also shown that it will violate Title IX at the upcoming hearing by, among other things: having the same moderator, process advisor, and CMU attorney as the First Hearing; utilizing the same policies/procedures used at the First Hearing (other than a change precluding the admission of new material on the day of the hearing); not, upon information and belief, retraining or properly training the members of the Second Board; and not providing the Second Board with an appropriate investigation into Jane's allegations. See Docket Entry 1 at ¶¶ 109-110, 147; See also Docket Entry 1 at Exhibit N.[1]

---

[1] Plaintiff's Verified Complaint seeks Declaratory Relief with respect to CMU's upcoming violations. Declaratory relief is appropriate where the parties have adverse legal interests, it will redress a real and substantial controversy between the parties, and it will be useful to John and others similarly treated by CMU. 28 U.S. Code § 2201. Those conditions are met here, as demonstrated herein and in the Verified Complaint.

4

### ii. Breach of Contract and Specific Performance

Under Pennsylvania law, the elements for breach of contract are: (1) the existence of a contract including its essential terms; (2) a breach of the contract; and (3) resultant damages. *See, e.g. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.,* 137 A.3d 1247 (Pa. 2016). Specific performance is available, "if a plaintiff clearly is entitled to such relief, there is no adequate remedy at law, and the trial court believes that justice requires such a decree." *Oliver v. Ball,* 136 A.3d 162, 166 (Pa. Super. Ct. 2016).

John is likely to succeed on his breach of contract claims against CMU. John accepted CMU's offer of admission and made payment of tuition and fees, creating a contract with CMU. The terms of this contract are contained within the written policies of the University, which is not authorized by CMU policies. See Docket Entry 1 at ¶¶ 39-40, 66, 154-57. Moreover, as a university contracting with a student, CMU is required, at a minimum, to provide for disciplinary procedures that are fundamentally fair. *Kimberg v. University of Scranton*, 411 Fed. Appx. 473, 481 (3d Cir. 2010). CMU has breached this contract through the inherent unfairness in the student conduct process as it was applied to John and through breach of its express terms, including various procedural errors and policy violations through the first investigation and UDC hearing and the initiation and conduct of the supplemental investigation and intention to hold second UDC hearing. See Docket Entry 1 at ¶¶ 52-54, 63, 72, 74-78, 84-85, 90, 97, and 156. Thus, not only will John demonstrate that the University's policies are unfair in substance and perception but he will also show that CMU, in showing biased deference to Jane, caused multiple procedural errors and violated its own written policies – all a clear breach of its contract with John. Through these breaches, John has suffered at least nominal damages and is exposed to an unauthorized, second UDC hearing and expulsion. See Docket Entry 1 at ¶¶ 155-157.

Similarly, John will succeed on his specific performance claim. With respect to this claim, CMU has clearly expressed its intent to breach its contract again by holding the December 6, 2017 hearing, which is not authorized or permitted by CMU's policies. See Docket Entry 1 at ¶¶ 159-165; See also Id. at Exhibit A. Due to the foregoing breaches and the nature of the relationship between John and CMU, there is no appropriate remedy available to John at law except for the Court to require CMU to specifically perform its obligations under its contract with John and stop all proceedings against John as those proceedings now lack authorization by CMU policy.

### iii. Due Process Violations

John is likely to succeed on the merits of his declaratory relief claim involving CMU's deprivation of his due process rights. See footnote 1, supra. The guarantee of due process is a constitutional right and because CMU has contracted to provide its students with "constitutional rights and responsibilities of any citizen under the law," it owes due process rights to John, which the University has clearly violated. See Docket Entry 1 at ¶ 167 and at Exhibit A. Due process is applicable in the university setting and includes principles of basic fairness in disciplinary hearings. *See, e.g. Doe v. Brandeis University*, 177 F. Supp. 3d 561, 601-602 (D. Mass. 2016). CMU will deprive John of, among other things: his liberty interest in his good name and reputation and his property interest in his education and continued enrollment at CMU, all without due process of law by holding the second hearing. At the second hearing, the University will: (i) utilize an inadequate investigation into Jane's allegations against John; (ii) fail to permit John or his attorney to cross-examine Jane; (iii) fail to permit John to call witnesses of his choosing; (iv) fail to provide John with an adequately trained Board that will allow John to present a sufficient number of questions to challenge Jane's credibility; (v) fail to provide John

with a Board that will not be biased against him; and (vi) fail to provide John with a Board that will not automatically accept Jane as credible. See Docket Entry 1 at ¶¶ 167-177.

### 3. *Plaintiff will Suffer Irreparable Harm*

"The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir. 2000). In the context of a university disciplinary proceeding, a plaintiff's inability to continue or complete his education constitutes irreparable harm. *See, e.g. Gati v. Univ. of Pittsburgh*, 91 A.3d 723, 729 n.10 (Pa. Super. 2014).

As the foregoing demonstrates, Plaintiff absolutely meets this requirement. Violations of John's rights and the unfair treatment of him by CMU must be stopped. If the University holds the second hearing, John will be expelled due to the Title IX violations, contractual breaches, and deprivations of due process. See Docket Entry 1 at ¶ 161. Accordingly, John's interest in the continued pursuit of his education and future employment will be irreparably harmed and lost as no comparable education exists if CMU moves forward with a second UDC hearing under its policies and procedures which, as demonstrated, are inherently unfair and fraught with gender-bias against John. See Docket Entry 1 at ¶¶ 52-54, 63, 72, 74-78, 84-85, 90, 97. Similarly, John will experience irreparable injury emotionally, including harm to his reputation, in being falsely accused as a sex offender.

### 4. *The Injunctive Relief will not Result in Harm to Nonmoving Parties*

In cases such as this, courts often determine that the balance of harm favors the student over the university because a student is typically raising constitutional or other unlawful violations by the university that would result in substantial harm to the student's educational and

potential employment opportunities, *See, e.g. Doe v. The Pennsylvania State University*, 2017 WL 3581672; *Doe v. University of Notre Dame*, 2017 WL 1836939; *Ritter v. Oklahoma*, 2016 WL 2659602; and *King*, 2014 WL 4197507. As set forth in the foregoing and in the incorporated Verified Complaint, that is the case here.

There is minimal harm, if any, to CMU if it is not enjoined – especially not compared to the harm John faces, as outlined in the foregoing. John's claims are based upon constitutional violations, Title IX violations, and breaches of contract, all of which, if permitted to continued, will permanently and irreparably harm his future educational and employment opportunities, among other things. John has demonstrated that he is likely to succeed on the merits of his claims and, thus, has shown that the balance of the harm favors granting injunctive relief.

5. <u>The Public Interest Favors such Relief</u>

The public has an interest in the protection of Plaintiff's constitutional rights and allowing him to continue the pursuit of his education and future employment. Plaintiff has vehemently denied all false allegations against him and is not a threat to others. Therefore, the public has a far greater interest in allowing a young, intelligent, and talented individual to continue in his educational pursuits without further interruption by the flawed and unlawful policies and procedures carried about by the University. Inarguably, the public has a great interest in protecting the laws and Constitution of this nation. Indeed, the public also has a significant interest in ensuring that the University does not continue to discriminate against students based upon their gender, or any other distinguishing characteristic.

6. <u>Bond Should be Waived because Defendants will not Be Harmed</u>

It is well-established that the court may waive security required by Rule 65(c) of the Federal Rules of Civil Procedure for any injunctive relief it grants. Specifically, ". . . in noncommercial cases, the court should consider the possible loss to the enjoined party together

with the hardship that a bond requirement would impose on the applicant." *Elliott v. Kiesewetter*, 98 F.3d 47, 59 (3d Cir. 1996). CMU is at no risk of any monetary loss if the requested injunctive relief is granted. Conversely, requiring a college student to post a bond would be a substantial hardship. Therefore, Plaintiff respectfully moves this court to waive security for any injunctive relief.

## IV. Conclusion

As the foregoing demonstrates, Plaintiff has met the standards for a temporary restraining order and preliminary injunction. Therefore, Plaintiff respectfully requests that the court enter a temporary restraining order and preliminary injunction enjoining CMU from holding a second disciplinary hearing on December 6, 2017, in violation of Plaintiff's legal, constitutional, and contractual rights and also enjoining the University from taking disciplinary action against Plaintiff for initiating this lawsuit.

Dated: December 5, 2017                                    Respectfully submitted,

                                                           LEECH TISHMAN FUSCALDO & LAMPL, LLC


                                                    By:    */s/ Timothy J. Lyon*
                                                           Timothy J. Lyon
                                                           PA ID No. 200439
                                                           525 William Penn Place, 28th Floor
                                                           Pittsburgh, PA 15219
                                                           *Counsel for Plaintiff*